## The State v. Patterson, *Appellant.*

1. **Criminal Law: LARCENY FROM DWELLING.** The larceny of property of the value of thirty dollars or more is grand larceny, without reference to the place of the theft. Stealing from a dwelling house, within the meaning of Revised Statutes, 1879, section 1309, constitutes grand larceny, regardless of the sum stolen.

2. —— : —— : INSTRUCTION. Where there is no testimony tending to show that a larceny was committed elsewhere than in a dwelling house, an instruction is misleading which leaves it to the jury to determine whether or not it was so committed.

3. —— : ——. Although property be stolen from a dwelling house, yet, if, when stolen, it was under the care and protection of the person from whom it was stolen, and not properly under the protection of the dwelling house, it does not constitute larceny from a dwelling under the statute, but the perpetrator will be punishable according to the value of the property stolen.

4. —— : DEFENDANT AS A WITNESS : CREDIBILITY. Where a defendant in a criminal cause testifies in his own behalf, the attention of the jury may be called to that fact and to his interest in the cause in determining what weight they will give to his testimony; but his attitude is not that of an accomplice and he does not require corroboration in order to be believed.

*Appeal from Pettis Criminal Court.*—HON. JOHN E. RYLAND, Judge.

REVERSED AND REMANDED.

*W. P. King, Jr.,* for appellant.

The stealing of property from the person of anyone in a dwelling house, where the property is under the care and protection of the person and not of the house, does not constitute the crime of larceny from a dwelling house. 1 Russell on Crimes, 854-5-6; 1 Bish. Crim. Law, 263, *et seq. ;* 2 Bish. on Crim. Law, 888–889 ; *Commonwealth v. Lester,* 129 Mass. 101; *Commonwealth v.*

*Hartnett*, 3 Gray, 450 ; *Rex v. Owen*, 2 Leach ( 4 Ed.) 572 ; *Commonwealth v. Smith*, 111 Mass. 429 ; *Rex v. Campbell*, 2 Leach ( 4 Ed.) 564 ; *Rex v. Castledine*, 2 East P. C. 645.

*John M. Wood*, Attorney General, for the State.

Instructions number one and two properly declared the law as to grand larceny and larceny in a dwelling house.    R. S. 1879, secs. 1308, 1309 ; *State v. Ramelsburg*, 30 Mo. 26 ; *State v. Butterfield*, 75 Mo. 297 ; *State v. Brown*, 75 Mo. 317 ; *State v. Kennedy*, 88 Mo. 341.

SHERWOOD, J.—The defendant was indicted under the provisions of Revised Statutes, 1879, section 1309, for stealing thirty-five dollars, the money of one Shanklin, in a dwelling house.  Being tried, he was convicted, and sentence having been passed upon him, he appeals to this court.

According to the testimony of the prosecuting witness, the money stolen consisted of a twenty-dollar gold piece, a ten-dollar gold piece and four or five dollars in silver.  It is also shown by the testimony that both defendant and Shanklin drank very heavily on the night of the seventeenth of February, 1888, and that Shanklin was very much intoxicated, so much so that he had to be helped up-stairs, fell on the floor, had to have assistance to pull his boots off, and was only able, after a struggle of several hours, to pull off his pants, which he left in the middle of the floor, and having the money before mentioned in his pockets, which he says he felt as he was going up to his room that night, when about twelve o'clock they returned to the hotel where they were stopping and in which room two other lodgers also slept, the room thus occupied containing three beds.

The next morning, Shanklin got up early, as he says, before daylight, but he was evidently dazed from

his night debauch, examined his pants and said, "I have been robbed." "Just then," he says, "I saw a silver dollar lying on the floor. I picked it up and said: 'They didn't get it all though. Here's a dollar.'" Patterson said: "Is it a dollar? Let me see." Witness then states he handed the dollar back to defendant over his shoulder, who took it and said he would go down and get a drink, hurriedly left the room with the dollar, and witness having finished dressing, went over to the police station, which it seems was close at hand, informed a couple of policemen of what had occurred, pointed out defendant as the guilty party, who was thereupon arrested. In the *interim* between the time he left the room where he slept and the time of his arrest, defendant went down to a saloon, called for a drink of whisky and gave a twenty-dollar gold piece to the bar-keeper, saying he had nothing smaller, and was in a hurry, receiving in change $19.85. This, with twenty-five cents he said Shanklin had given him, made $20.10. With this sum he then went over to the hotel (Shanklin meanwhile having gone after an officer), threw a silver dollar on the counter, and asked the proprietor to give it to Shanklin, saying, "I don't want his money; I'll break his d—d head if he says I stole his money."

Upon being arrested, defendant was informed that Shanklin claimed that he had some thirty-five dollars stolen from him. At first defendant denied having the money, but upon being searched, and $19.10 found upon his person, he said: "I got his money," stating at the same time that he himself had been robbed of twenty dollars some days before, and took this to play even.

There was considerable testimony showing that it was daylight when the coin picked up from the floor was taken, and there was the testimony of two witnesses, the defendant and another, showing that such coin was a twenty-dollar gold piece, and not a silver dollar, and

defendant, when on the stand, stated that he paid for the drink of whiskey, which he took that morning with the twenty-dollar gold piece, because he wanted to take Shanklin back change for a dollar, so that he would not suspect him, as he knew that Shanklin thought he only got a dollar from him. Defendant further stated that the twenty-dollar gold piece was all the money he took from Shanklin.

This, in substance, was the testimony, and at its close, the court gave, at the instance of the state, the following instructions:

"1. The court declares the law to be that, if the jury find and believe, from the evidence, that at any time within three years next before the fourth day of April, 1888, at the county of Pettis and state of Missouri, the defendant stole, took and carried away thirty dollars or more of the money of the witness Shanklin, with intent to convert it to his own use, then the jury should convict the defendant of grand larceny, without regard to where the larceny was committed. And so convicting, they will assess his punishment at imprisonment in the penitentiary at not more than five nor less than two years, if the larceny was committed out of a dwelling house, and at not less than two nor more than seven years, if committed in a dwelling house.

"2. Even, although the jury find and believe, from the evidence, that defendant only stole a twenty-dollar gold piece from Shanklin ; yet, if they further find that the stealing was done in a dwelling house, as defined in another instruction, they should find the defendant guilty of grand larceny, and so finding, assess his punishment at imprisonment in the penitentiary at not less than two nor more than seven years.

"3. The court instructs the jury that a dwelling house is a house, or other edifice, which shall have been usually occupied by persons lodging therein, and if they find, from the evidence, that the hotel or restaurant of C. Freidenberger was, at the time of the alleged

larceny, a house usually occupied as aforesaid, then it is a dwelllng house in the eye of the law.

"4. The court instructs the jury that, under the statutes of this state, the defendant is a witness in his own behalf, and his testimony should be considered with that of the other witnesses in arriving at a verdict; but the fact that the defendant is on trial and has an interest in the result, may be considered by the jury in determining the weight to be given the defendant's testimony, and as affecting his credibility. Whatever the defendant says against himself should be believed because said against himself, but whatever he says in his own behalf the jury are not bound to believe, but may believe or disbelieve, according as it is corroborated, or not corroborated, by the other proofs in the case.

"5. If the jury should find and believe, from the evidence, that Shanklin parted with the immediate possession of a coin he supposed was a dollar, willingly, yet that said coin was in fact a twenty-dollar gold piece and defendant knew that fact and formed the felonious intent to steal it, and to deprive the said Shanklin of the said coin, and did in fact steal and convert it to his own use; that said stealing and conversion of' said gold coin was committed in a dwelling house, as defined in another instruction, then the jury will find him guilty and assess his punishment as elsewhere directed for larceny committed in a dwelling house.

"6. If, after considering all the evidence in the case, the jury have a reasonable doubt of defendant's guilt, they should acquit him, but such a doubt, to warrant an acquittal, should be a substantial doubt of his guilt, based on all the evidence in the case, and not a mere possibility of his innocence."

The defendant thereupon asked the court to give the following instruction:

"1. The jury are instructed that, to constitute larceny from a dwelling house, the property stolen must, at the time of the commission of the offense, be

within and under the protection of the dwelling house, and not in the personal care and keeping, or on the person of any one in the house; and that, if they believe, from the evidence, that the defendant stole and carried away a sum of money less than thirty dollars, from the person of G. T. Shanklin, not in the night time, they will acquit him of the charge of larceny from a dwelling house, although they further believe that, at the time of the commission, the said G. T. Shanklin was in a dwelling house, and they must find him guilty of petit larceny, and assess his punishment at imprisonment in the county jail not exceeding one year, or by a fine not exceeding one hundred dollars, or by both such fine and imprisonment."

I. The only testimony, as seen from the foregoing statement, connecting the defendant with the theft of the sum mentioned in the indictment, is his admission to the policemen who arrested him, when he said: "*I got his money.*" If this admission is to be construed as referring to the larger sum, the thirty-five dollars, then the defendant was doubtless guilty of the crime of grand larceny, no matter where the crime was committed, and if in a dwelling house within the meaning of Revised Statutes, 1879, section 1309, then he was guilty of grand larceny, regardless of the sum stolen. *State v. Ramelsburg*, 30 Mo. 26; *State v. Brown*, 75 Mo. 317; *State v. Kennedy*, 88 Mo. 341. This is the view taken in the first instruction given at the instance of the prosecution, but there is one trouble about that instruction; there is not a particle of testimony to support the idea that the money was stolen elsewhere than in a dwelling house, and so the instruction was calculated to mislead, and is therefore objectionable in the particular referred to.

II. But if the admission of the defendant, "*I got his money,*" is to be construed as applying only to the twenty-dollar gold piece, and this view is supported by his own testimony as well as corroborated to some extent by that of two other witnesses who slept in the same

room at the hotel, and by the testimony of the policeman
Barnett, as to the amount found upon defendant's person
at the time of his arrest, and by the amount the proprietor
of the hotel says the defendant paid him, but a moment
or two before the arrest occurred, then the question
arises, assuming the testimony of the defendant to be
true, whether the taking of the twenty-dollar gold piece
by defendant, was a larceny committed "*in a dwelling
house*," within the purview of the section upon which
the present prosecution is bottomed. I understand the
law to be that if a larceny is perpetrated by stealing
property in a dwelling house, which may properly be
said to be *under the protection of the dwelling house*,
then the thief is guilty under the section already men-
tioned; but although the property was stolen "*in a
dwelling house*," yet if stolen when *under the care and
protection of the person from whom the property was
thus stolen*, the offense charged in the present indict-
ment is not committed. This view is abundantly sup-
ported by authority. *Rex v. Campbell*, 2 Leach (4 Ed.)
564; *Rex v. Owen*, 2 Leach (4 Ed.) 572; s. c., 2 East P.
C. 644, 645; *Rex v. Watson*, 2 East P. C. 680, 681; *Rex
v. Taylor*, Russ. & Ry. 417; Bishop's Stat. Crimes
( 2 Ed. ) sec. 233; *Rex v. Hamilton*, 8 Car. & P. 49; *Com-
monwealth v. Smith*, 111 Mass. 429; *Commonwealth v.
Hartnett*, 3 Gray, 450; *Commonwealth v. Lester*, 129
Mass. 101.

These authorities show that it is not every larceny
committed in a dwelling house which becomes thereby
elevated from what would otherwise be a simple larceny,
into a compound or statutory larceny; but that when-
ever the property stolen is under the eye and protection
of one who is awake, that then the perpetrator of the
theft is only punishable for larceny according to the
value of the goods and not otherwise. This being the
case, it should be ruled that the fifth instruction asked
by the state should have been refused. And if the

second instruction given on behalf of the state is to be construed to mean the same as the fifth instruction already referred to, it must be condemned for the same reason.

III.   This court has frequently ruled that where a defendant is a witness, the attention of the jury may be called to that fact and to his interest in the cause in determining what weight they will give to his testimony; but this court has never yet ruled that the testimony of a defendant witness occupies the same attitude as that of an accomplice in crime, requiring corroboration in order to be believed.   The giving of the fourth instruction at the instance of the state was therefore error.

For the errors aforesaid, the judgment must be reversed and the cause remanded.   All concur, except BARCLAY, J., who dissents.